UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| JOHN MAY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-14-418-M |
| D.O.C. DIRECTOR PATTON et al., | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff John May, an Oklahoma prisoner appearing pro se and proceeding *in forma pauperis*, filed suit under 42 U.S.C. § 1983, alleging that state officials have violated and are violating various rights guaranteed to him by federal and state law. *See generally* Compl. (Doc. No. 1) at 2-4, 7.[1] United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. The undersigned has reviewed the Complaint and recommends that it be dismissed without prejudice for the reasons outlined below.

### STANDARD OF REVIEW

The Court is obligated to review Plaintiff's pleading in order to identify its cognizable claims and to dismiss the pleading, or any portion thereof, that is frivolous,

---

[1] Citations to documents filed with the Court use the page and attachment numbers assigned by CM/ECF. When quoting from the Complaint, the undersigned has occasionally altered capitalization, punctuation, and unambiguous abbreviations and spelling errors to improve readability.

1

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1). To survive dismissal, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). A claim is facially plausible when the well-pled factual allegations, accepted as true and viewed in the plaintiff's favor, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under the governing law. *Iqbal*, 556 U.S. at 678, 679; *see Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013).

A pro se plaintiff's complaint is "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," so that any potentially valid claim can be fairly decided on its merits. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a pro se plaintiff must allege "facts on which a recognized legal claim could be based," *id.*, and district courts should not "construct . . . claims or grounds [for] relief" not fairly presented in the complaint, *Windsor v. Colo. Dep't of Corr.*, 9 F. App'x 967, 970 (10th Cir. 2001).

PLAINTIFF'S ALLEGATIONS AND RELIEF SOUGHT

Plaintiff filed this suit in April 2014 while incarcerated at Oklahoma State Reformatory ("OSR"), a state-operated prison in Granite, Oklahoma. Compl. at 1. Plaintiff seeks declaratory and injunctive relief against: (1) Robert Patton and his unidentified "agents" within the Oklahoma Department of Corrections ("ODOC"), and

(2) an unspecified number of "unknown agents" employed "state-wide" at state district courts and the Oklahoma Court of Criminal Appeals. *Id.* at 1-2, 5. Plaintiff asserts that he is suing Defendant Patton, who formerly was ODOC's Director, and his agents under 42 U.S.C. § 1983 because they are "responsible for D.O.C. policy, administration of court ordered sentences, and compliance and enforcement of all laws." *See id.* at 1. Plaintiff asserts that he is also suing the unidentified state-court employees under § 1983 because "they refuse to follow their own court rules, state statutes, 10th Circuit and U.S. Supreme Court orders, have suspended habeas corpus, due process, and equal protection of [the] law." *See id.* at 2.

Plaintiff broadly describes the "nature" of his case as follows:

> From 2001 to this date, D.O.C. Directors caused state-wide prison overcrowding, placing this Plaintiff in imminent danger of serious physical injury by reducing money to spend on medical and legal services and food; causing a hostile living environment by policy OP-030102, forced random double celling of incompatible prisoners that state-wide has resulted in multiple murders, rapes, and serious physical injuries to 100s of prisoners, and placing this Plaintiff in imminent danger of serious physical injury, and at risk of death.
>
> State statutes and D.O.C. policies exist that the director of the Department of Corrections could use to release prisoners so that there would be no need for private prison or jail housing of state prisoners, and as a result would free up this money to reduce the hostile living environment, provide more money for medical services, decreasing imminent danger of serious physical injury.
>
> Since 1995 state prison law libraries have stopped getting legal updates of law books, and have removed law books from the libraries state-wide, and D.O.C. Director Jones made it an automatic denial of all grievances, and imposed punishment on all prisoners who tried to exhaust administrative remedies.
>
> . . . .

3

> Because of state-wide prison overcrowding Plaintiff's finger was broken, and D.O.C. refused to fix it, saying prison overcrowding prevents them paying for it.
>
> Because of OP-030102 random forced double celling policy, last year Plaintiff's finger was broken, and still defendants refuse to fix it. For 5 months Plaintiff has suffered pain in his side, and still Defendants refuse to examine it, fix it, or give medication for it.
>
> Plaintiff file[d] a post-conviction, a witness came forward and proved Plaintiff is actually innocent. But all state courts refuse to follow their own court rules, state statutes, suspended due process and habeas corpus in all state courts.
>
> State-wide design capacity of all prison cells is for one prisoner, but D.O.C. is housing 2 prisoners in each cell designed for two [sic], and now is exceeding facility design capacity by 150% by moving in bunk beds for more prisoners, and such acts increases risk of serious physical injuries, and death, while prison ventilation systems and double celling exposes Plaintiff to black mold, violent physical attacks, A.I.D.S, [viruses], bacteria, H.I.V., hepatitis C, T.B. and other communicable diseases, while forcing Plaintiff to eat & drink from utensils infected prisoners ate & drank from only moments before, all caused by prison overcrowding that Defendants cause by refusing to follow their own court rules, statutes, and policies that could release prisoners.
>
> In addition, Defendants and parole officers refuse to consider anyone but female prisoners for early release/parole or commutation to run sentences together, or reduce sentences [illegible].
>
> [The] Okla. Supreme Court, in 1993, in Re Petition No. 363 mandated that when federal law reduces life sentences to 20 years, cuts all drug [illegible] sentences in half, Oklahoma must do the same. But Defendants refuse, so they can keep state prisons overcrowded, keeping Plaintiff in imminent danger of serious physical injury and death.

Compl. at 2, 7 (emphasis and internal quotation marks omitted) (citing Okla. Dep't of Corrs., OP-030102 *Offender Housing* (eff. July 24, 2014)).

From there, Plaintiff asserts the following "Counts":

Count I: [ODOC] refuses to comply with laws that were a part of Plaintiff's sentence when he received it, refuses to comply with laws and policies already in existence to reduce overcrowding, have ex-post-facto enhanced punishment, refuse[s]

4

> to use 57 O.S. § 332.7(A) to set parole and commutation dates, ha[s] been, [is], and will place Plaintiff in imminent danger of serious physical injury, and risk of death.

*Id.* at 3 (emphasis omitted). In support of Count I, he attempts to adopt by reference the "pleadings and exhibits filed in *Cotner v. McCollum*, CIV-14-137-HE," which he says support his allegation that "OP-030102 places Plaintiff at risk, state-wide, of serious physical injury and death."[2] *Id.*

> Count II: Medical co-pay and legal co-pay are ex-post facto punishment enhancements; refusal to provide access to a fully stocked, up to date law library, legal assistance is an ex-post facto punishment enhancement, impeding access to courts; co-pay and inadequate law library also contribute to state-wide overcrowding, placing Plaintiff in imminent danger of serious physical injury and risk of death. [ODOC] is not authorized to act as a collection agent for the courts. Prison overcrowding reduces money and services for medical, legal, and upkeep of facilities state-wide.

---

[2] Rule 10 of the Federal Rules of Civil Procedure provides that "[a] statement in a pleading," including in a written document submitted as an exhibit to a pleading, "may be adopted by reference . . . in any other pleading or motion." Fed. R. Civ. P. 10(c). To proceed under this rule, however, the later pleading or motion must include "explicit and direct reference to *specific* allegations" or statements in the earlier pleading. *Fullerton v. Maynard*, No. 91-7002, 1991 WL 166400, at *2 (10th Cir. Aug. 29, 1991) (emphasis added); *cf. U.S. Fid. & Guarantee Co. v. U.S. Sports Specialty Ass'n*, No. 2:07-cv-996, 2012 WL 2403530, at *1 (D. Utah June 25, 2012) ("'The later pleading must adopt specific portions or all of the earlier pleading with a degree of clarity which enables the responding party to ascertain the nature and extent of the incorporation." (alteration and internal quotation marks omitted) (quoting *Gen. Accident Ins. Co. of Am. v. Fid. & Deposit Co. of Md.*, 598 F. Supp. 1223, 1229 (E.D. Pa. 1984)). Accordingly, Plaintiff's attempt to incorporate by reference the "pleadings and exhibits" in *Cotner*—a case in which the Court denied Plaintiff's motion to intervene—is unavailing. *Cf. Argota v. Miller*, 424 F. App'x 769, 772 (10th Cir. 2011) (noting the lack of authorization in Rule 10(c) for incorporation of allegations in pleadings filed in another court, "even involving the same parties"). Nevertheless, the undersigned has reviewed the cited materials and found no information therein that would affect the recommendation of dismissal below.

*Id.* Plaintiff further alleges that these copayments are unconstitutional "ex-post facto punishment enhancements" because

> the sentencing court did not impose the punishment of medical or legal co-pays upon [Plaintiff]. That punishment was administratively imposed by Defendants, making punishment more onerous, and 8th and 14th Amendment violations that impedes access to courts, health care, nutritious food, and recreation, and as part of Plaintiff's sentence in 1992 he was not to be forced to pay co-pay for legal and medical services and was to receive the same level of medical services and medication that [was] available to those outside prison, that because of state-wide prison overcrowding, are no longer provided [to] Plaintiff.

*Id.*

> <u>Count III</u>: State courts refuse to enforce 12 O.S. § 2012, Dist. Court Rule 4.E, *U.S. v. Ivy*, 83 F.3d 1297 (n.47) [sic]; 12 O.S. § 1334 (habeas); U.S. Supreme Court and 10th Circuit Court rulings and D.O.C. refuses to administer sentences under legislative definitions that life sentences are discharged between 10 and 60 years.

*Id.* at 4. Plaintiff again attempts to adopt by reference the "pleadings, exhibits, and interveners of [*Cotner v. McCollum*,] CIV-14-137-HE," which he says support his allegation that the Oklahoma state courts "refuse to comply with or enforce their own court rules, constitution, state statutes, or legislative definitions," and have "denie[d] due process in state post-conviction proceedings, suspended habeas corpus and mandamus."[3] *Id.*

Plaintiff separately alleges that he "cannot read or write, defendants refuse to provide any help to him with grievances [illegible], and medical refuse[s] to fix his broken finger, false teeth, or pain in his side for [the] last five months." *Id.*; *see also*

---

[3] *See supra* n.2.

6

Compl. Ex. 1 (Doc. No. 1-1) at 1. Elsewhere in his Complaint, Plaintiff alleges that he broke his finger in late 2013 and that "Defendants still refuse to examine it, fix it, or give medication for it," "saying prison overcrowding prevents them [from] paying for it." Compl. at 7.

Plaintiff seeks various forms of injunctive relief against Defendants in their official capacities.[4] *See* Compl. at 5. He does not seek damages from any Defendant. *See id.*

## ANALYSIS

The allegations above largely "fail[] to provide the information necessary to inform the district court whether relief is available, or to allow [Defendants] to file a meaningful and responsive pleading" in this action. *Bakalov v. Utah*, 4 F. App'x 654, 657 (10th Cir. 2001). Indeed, Plaintiff's pleading "contains so many unintelligible and conclusory allegations and statements" that it is nearly "impossible to ascertain" the exact issues "raised for the court's disposition." *Id.* Plaintiff's focus on the conditions of

---

[4] Specifically, Plaintiff requests: (1) "declaratory and injunctive relief on each issue/claim raised" in his Complaint; (2) a "permanent injunction of OP-030102 random forced double celling policy"; (3) an "order compelling state agencies and employees to comply with and enforce" various state district court rules, state statutes, and federal-court decisions; (4) an order granting Plaintiff "leave . . . to file a 28 U.S.C. § 2241" petition; (5) "corrective action stopping all co-pay; fixing conditions in all facilities; to release prisoners to reduce over-crowding, and safety of non-violent prisoners"; and (6) "any other corrective orders the court deems necessary or justified." Compl. at 5. Plaintiff does not state that he is suing Defendants in their "official" capacities as opposed to their "individual" capacities but the relief sought indicates that his is strictly an official-capacity action. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991))).

confinement in "all" prisons "state-wide" and the conduct of proceedings in "all state courts" also raises the question of whether this Court has subject-matter jurisdiction over any of Plaintiff's claims.

A.     *Article III Standing*

Article III of the United States Constitution authorizes federal courts to resolve "definite and concrete" disputes "touching the legal relations of parties having adverse legal interests" and "admit[ting] of specific relief through a decree of a conclusive character." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The plaintiff bears the burden of showing: (1) he or she has suffered an "injury in fact"—i.e., "an invasion of a legally protected interest"—that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) the injury is fairly traceable to the defendant's challenged conduct; and (3) it is likely, "as opposed to merely speculative," that the alleged injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). The court must dismiss an action if it "determines at any time," Fed. R. Civ. P. 12(h)(3), that the plaintiff has not made this showing of standing to sue "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1172 (D. Colo. 2009) ("Standing is assessed on a claim-by-claim basis, and a plaintiff who has sufficient standing to raise some claims may lack standing to raise others." (citing *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1279 (10th Cir. 1998))).

To establish standing, Plaintiff must allege "specific facts" that either "connect[] the allegedly unconstitutional conditions with his own experiences" in the relevant prisons and courts or "indicat[e] how the conditions caused him [an] injury" that can be redressed in this lawsuit. *See Swodoba v. Dubach*, 992 F.2d 286, 289-90 (10th Cir. 1993). "'General observations' about prison conditions"—such as those that pervade the Complaint—"are not actionable under 42 U.S.C. § 1983." *Cooks v. Whetsel*, No. CIV-11-1288-D, 2013 WL 1337206, at *7 (W.D. Okla. Feb. 22, 2013) (R. & R.) (alteration omitted) (quoting *Swodoba*, 992 F.2d at 289-90), *adopted*, 2013 WL 1337200, at *1 (W.D. Okla. Mar. 29, 2013).

After careful review, the undersigned finds that only five allegations clear this threshold:

- Plaintiff "cannot read or write, [and] Defendants refuse to provide any help to him with grievances." Compl. at 4.

- Plaintiff broke his finger in late 2013, and "Defendants still refuse to examine it, fix it, or give medication for it." "Medical providers" have refused "for the last five months" to address the pain in Plaintiff's side. Compl. at 4, 7; Compl. Ex. 1, at 1.

- "[B]ecause of state-wide prison overcrowding," Plaintiff is no longer receiving "the same level of medical services and medication that [were] available to those outside prison" when Plaintiff was sentenced to a term of imprisonment in 1992. Compl. at 3.

- "Prison ventilation systems and double celling exposes Plaintiff to black mold, violent physical attacks, A.I.D.S, [viruses], bacteria, H.I.V., hepatitis C, T.B. and other communicable diseases, while forcing Plaintiff to eat and drink from utensils infected prisoners ate and drank from only moments before, all caused by prison overcrowding." Compl. at 7.

- "Medical co-pay[s] and legal co-pay[s] are ex-post facto punishment enhancements[.] . . . . [T]he sentencing court did not impose the punishment of medical or legal co-pays upon [Plaintiff]. That

9

punishment was administratively imposed by Defendants, making punishment more onerous . . . ." Compl. at 3.

The claims of the Complaint based on all other factual allegations should be dismissed without prejudice for "failure to allege the [P]laintiff's standing to proceed" in federal court. *Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990).

B.  *Eleventh Amendment Immunity*

The Eleventh Amendment immunizes the State of Oklahoma and its Department of Corrections from lawsuits brought under 42 U.S.C. § 1983. *See Berry v. Oklahoma*, 495 F. App'x 920, 921-22 (10th Cir. 2012) (noting that "Oklahoma has not consented to be sued in federal court," "§ 1983 does not abrogate states' sovereign immunity," and ODOC is "shielded by [Oklahoma's] sovereign immunity because it is an arm of the state" (citing Okla. Stat. tit. 51, § 152.1; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Eastwood v. Dep't of Corr.*, 846 F.2d 627, 631-32 (10th Cir. 1988))); *accord Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought."). However, pursuant to the *Ex parte Young* exception, "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Ex parte Young*, 209 U.S. 123 (1908)).

As former ODOC Director, Defendant Patton (or his substitute under Federal Rule of Civil Procedure 25(d)) is a proper official-capacity defendant to this action. "To determine whether the *Ex parte Young* exception applies, [courts] 'need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Muscogee (Creek) Nation*, 669 F.3d at 1167 (quoting *Verizon Md.*, 535 U.S. at 645). The first requirement is met if the complaint presents "a non-frivolous, substantial claim for relief against the state officers that does not merely allege a violation of federal law solely for the purpose of obtaining jurisdiction." *Id.* at 1167 (alteration and internal quotation marks omitted). The second requirement is met if the request for relief seeks to "prevent prospective violations of federal law" rather than "to address alleged past harms." *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012); *see also Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 912-13 (10th Cir. 2008).

Pursuant to these authorities, the five allegations set forth above largely address past conduct upon which this Court has no authority to pass judgment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("The [*Ex parte Young*] exception is narrow: It applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past . . . ." (citation omitted)). It is only to the extent that Plaintiff bases these claims on his current conditions of confinement and requests an injunction "stopping" enforcement of the offending policies—i.e., the "random forced double celling policy" and the copayment requirement—that any of Plaintiff's § 1983 claims may proceed under the *Ex*

*parte Young* exception. *See id.* Plaintiff's other § 1983 claims based upon these five allegations should be dismissed without prejudice for lack of subject-matter jurisdiction. *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 915 (10th Cir. 2013) (holding that a § 1983 claim that did not fall within the *Ex parte Young* exception "was properly dismissed by the district court for lack of subject-matter jurisdiction"); *see also Verizon Md.*, 535 U.S. at 646 ("[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim.").

C. *Failure to State a Claim Under 42 U.S.C. § 1983*

To state a claim for relief under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, because this is an official-capacity action, Plaintiff must allege that a challenged state "policy or custom . . . played a part in the violation of federal law." *Graham*, 473 U.S. at 166. Determining whether Plaintiff's remaining factual allegations clear this threshold is "a context-specific task" that depends on the constitutional violation alleged. *Iqbal*, 556 U.S. at 679.

Plaintiff first asserts that ODOC's "random forced double celling policy" puts him in "imminent danger of serious physical injury" because it permits prison officials to house two "incompatible prisoners" together in one cell. Compl. at 2, 7. He also asserts that he broke his finger in late 2013 "because of" this housing policy, and he arguably attempts to tie the policy to the other allegations he makes regarding the current state of medical care at OSR. *See id.* at 7. These allegations implicate Eighth Amendment

standards governing conditions of confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981).

"The Eighth Amendment's prohibition [on] cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). But the "Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive or even harsh'" without being unconstitutional. *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (quoting *Rhodes*, 452 U.S. at 347, 349). For example, it is settled that "double celling" prisoners, in itself, for even extended periods of time, does not violate the Eighth Amendment. *Rhodes*, 452 U.S. at 347-49; *Tyree v. Ward*, 43 F. App'x 351, 354 (10th Cir. 2002). Rather, the "circumstances, nature, and duration of the challenged conditions must be carefully considered" in determining whether such conditions constitute cruel and unusual punishment. *DeSpain v Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (internal quotation marks omitted); *see also Rhodes*, 452 U.S. at 347. Plaintiff's Complaint offers nothing more than "naked assertion[s], devoid of further factual development," *Iqbal*, 556 U.S. at 678, that ODOC's "random forced double celling policy" puts Plaintiff in "imminent danger of serious physical injury" in violation of the Eighth Amendment. Compl. at 2, 7. Nor do Plaintiff's conclusory allegations about the effect of overcrowding on the availability of healthcare services at OSR provide "sufficient factual matter" to support a reasonable inference that Plaintiff is "incarcerated under conditions

posing a substantial risk of serious harm" to his health or safety. *See Iqbal*, 556 U.S. at 678-79; *Farmer*, 511 U.S. at 834. Accordingly, this § 1983 claim for prospective injunctive relief should be dismissed without prejudice for failure to state a claim upon which relief can be granted against ODOC's Director.

Plaintiff also asserts that ODOC's policy requiring inmates to make copayments for medical and legal services violates the constitutional prohibition on ex post facto laws. Compl. at 3. In affirming the dismissal of a nearly identical claim, the Tenth Circuit explained that the "'prohibition [on] *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them.'" *Tijerina v. Patterson*, 507 F. App'x 807, 809 (10th Cir. 2013) (quoting *Collins v. Youngblood,* 497 U.S. 37, 41 (1990)). "The Clause prohibits laws that make a previously innocent act criminal, increase the punishment for a crime after its commission, or deprive a defendant of a defense that was available at the time a crime was committed." *Id.* (citing *Collins*, 497 U.S. at 42). Plaintiff's Complaint offers nothing more than his legal conclusion that the copays are "ex-post post facto punishment[s]" that make his term of imprisonment "more onerous." *See Carmell v. Texas*, 529 U.S. 513, 544 n.31 (2000) (noting that "[w]hether a state law is properly characterized as falling under the *Ex Post Facto Clause*" is a question of federal law). Moreover, Plaintiff's few well-pled factual allegations support a reasonable inference "the fees at issue are not attached to [Plaintiff's] criminal conviction but instead are charged for medical [or legal] services rendered," *Tijerina*, 507 F. App'x at 809; *see* Compl. at 3. Accordingly, this § 1983 claim for prospective injunctive relief

also should be dismissed without prejudice for failure to state a claim upon which relief can be granted against ODOC's Director.

## RECOMMENDATION

The undersigned recommends that Plaintiff's Complaint (Doc. No. 1) be dismissed in its entirety. The claims of the Complaint challenging ODOC's copayment and "forced double celling" policies should be dismissed without prejudice for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c)(1). The remaining claims of the Complaint should be dismissed without prejudice for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by July 21, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 30th day of June, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE